Michele L Sacco
    Plaintiff

Case No: 3:07cv1384 (JBA)

FILED

Legg Mason Investment Counsel & Trust Co,
Legg Mason Inc. & Legg Mason Investment Counsel LLC
    Defendants

2009 DEC 17  P 3: 46

U S. DISTRICT COURT

## Motion in Objection to Bill of Costs

The Plaintiff is submitting this objection to the bill of costs on the grounds that it is inequitable, unduly

burdensome, and her case was filed in good faith.  The Plaintiff does not have the ability to pay

$2,801.00 to the court since being fired from Legg Mason in December 2008 and still without

employment.  It would be great hardship for the Plaintiff to pay Legg Mason for these costs.  The

Plaintiff collects $544 per week from the Connecticut Unemployment Department (see attached).  Taxes

on the unemployment benefits still need to be paid.  The Plaintiff, being fired from the financial

industry, does not know when full time employment will be obtained.

In addition, the Plaintiff claims severe hardship due to her inability to participate in Legg Mason's

severance package which she earned over her nine-years of employment with Legg Mason. The

severance package would have paid the Plaintiff three-weeks for each year worked plus a percentage of

her performance bonus for a total of $70,448.72 (see attached) in December 2008. In order for the

Plaintiff to collect her severance, Legg Mason required the Plaintiff to sign a release that would have

disallowed the Plaintiff to exercise her rights to a trial scheduled to occur on or around spring 2009, just

a few months away.  The Plaintiff filed this case in good faith in September 2007, and sought to exercise

her rights to appear in court.  Legg Mason retained the Plaintiff's severance package worth $70,448.72.

Lastly, Legg Mason claims that the deposition of Linda Mahon was "necessarily obtained for the preparation of the case and not for the convenience of counsel" but then tells the court that Linda Mahon had previously complained about unprofessional, hostile, and unjustified behavior while she was employed by Legg Mason.   Therefore, Legg Mason knew of her complaints prior to her deposition.  Legg Mason also claims that the deposition of Linda Mahon was necessary because the Plaintiff identified Ms. Mahon "as being involved in one of the incidents of alleged retaliation by Ms. Mahon's supervisor, Bill Constantine in one of her complaints to Human Resources."   The Plaintiff asserts that Legg Mason knew of the details regarding this claim fully prior to Linda Mahon's deposition as evidenced by the apology letter sent to the Plaintiff by William Constantine in which he states that he was reprimanded by Human Resources for this incident. (see attached)  Furthermore, Linda Mahon reported this incident to Human Resources while she was employed by Legg Mason.  Legg Mason spoke to both William Constantine and Linda Mahon about this incident prior to the deposition.  William Constantine admitted to the incident and for this reason's the Plaintiff argues that the deposition of Linda Mahon was not necessary.

For the above reasons, the Plaintiff respectfully requests that the court exercise its sound discretion and deny the defendant's motion for costs.

Michele Sacco- Pro Se
20 Rockland Place
Old Greenwich, CT 06870

Certificate of Service

I hereby certify that on December 17, 2009, a copy of the foregoing was filed with the Court and a copy was sent to the following parties of record via the US Postal Service.

J. Michael McGuire, Esquire
Fiona W. Ong, Esquire
Shawe & Rosenthal, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201

Elizabeth K. Acee, Esquire
LeClaire Ryan
555 Long Wharf Drive
8th Floor
New Haven, CT 06511

Dear Michele,                          May 1, 2006

 As you are aware, I made a comment about you to Linda that was regrettable, unbased and unnecessary. For this I sincerely apologize and it will never be repeated.

 Legg Mason has appropriately reprimanded me and a lesson has been well learned.

 I hope your new position is going well and that it launches you to new heights. Sincerely,
        Bill

CONNECTICUT LABOR DEPARTMENT

EMPLOYMENT SECURITY DIVISION

O   O
O   O
O   O
O   O
O   O
O   O

SACCO,MICHELE L
20 ROCKLAND PLACE
OLD GREENWICH CT 06870

IF YOU HAVE BEEN FILING BY INTERNET(www.ct.gov/dol)
OR TELEPHONE AND ARE STILL CLAIMING BENEFITS,
REMEMBER TO FILE YOUR NEXT CLAIM.

IF YOU ARE FILING BY MAIL, CONTINUE TO MAIL IN
YOUR CLAIM FORM AS DIRECTED.

PLEASE KEEP THIS INFORMATION FOR YOUR RECORDS
DATE ISSUED: 09/20/2009
WEEK ENDING: 09/19/2009

XXX-XX-8377

Separate the check along the perforated line very CAREFULLY.   Banks can refuse to cash torn checks



December 4, 2008

Michele Sacco
20 Rockland Place
Old Greenwich, CT 06870

Re:     Severance Agreement and Release of Claims

Dear Michele:

This letter sets forth the terms pertaining to the termination of your employment by Legg Mason & Co., LLC ("Legg Mason") effective as of **December 4, 2008,** (the "Separation Date"). We hope that your separation from Legg Mason can occur as smoothly as possible for you and for Legg Mason.

You will be paid through December 31, 2008, and you will receive your final paycheck on that date. You will also receive any accrued but unused paid time off to which you may be entitled, if any, within 45 days of your last day worked.

I am authorized to offer you the following severance package, contingent upon your agreeing to all terms and release provisions described below.

1.      Subject to your signing this Agreement, Legg Mason will pay you severance pay in the amount of **$70,448.72.** This payment will be less any applicable taxes and other deductions required by law and will be paid in a lump sum within 45 days from the date you execute this Agreement or within 45 days from the Separation Date, whichever is later.

Furthermore, in exchange for the consideration in the form of your agreement to the terms provided in this Agreement, you are eligible for career transition services. These career transition services are subject to IRS rules applicable to reimbursements and in-kind benefits under separation pay plans. Information regarding career transition and outplacement services will be mailed to your home address within two (2) weeks after you have signed and executed this Agreement. Please contact us if you do not receive this information. You will have three (3) months to make initial contact with the outplacement services vendor.

If you are currently enrolled in Legg Mason's medical, dental and/or vision plan, your current active coverage will end on December 31, 2008 and you will be eligible for up to 18 months of COBRA continuation coverage.

Under this Agreement, you will also receive a COBRA subsidy consisting of 100% of your applicable COBRA premium for three months (January 1, 2009 – March 31, 2009),

followed by three months of subsidy at 50% of your applicable COBRA premium for the subsequent three months (April 1, 2009 – June 30, 2009). You will receive a COBRA Enrollment package within two weeks of your separation date. You must complete the Enrollment forms and return them to the COBRA administrator within 60 days in order to receive the COBRA subsidy and continue your health benefits.

You also understand and agree that if, before the severance pay above is remitted to you, you are offered a position by Legg Mason having a rate of pay that is either greater than or equal to your current pay, you will no longer be entitled to the severance package outlined in this Agreement, but the other provisions of this Agreement will remain in place and be enforceable. You further understand and agree that if Legg Mason extends an offer to rehire you, for a position having a rate of pay that is either greater than or equal to your current pay within 30 days from receipt of the severance payment, Legg Mason shall be entitled, at its discretion, to repayment of all or a portion of the severance pay described above.

2.     Except as expressly set forth in this Agreement, you will be entitled to no other benefits or further compensation from Legg Mason, and all payments made to you shall be less all applicable taxes and other deductions required by law.

3.     In connection with your employment with Legg Mason or its related entities, you had access to information of a nature not generally disclosed to the public. You agree to maintain the confidentiality of any client information obtained during your employment with Legg Mason or its related entities, as well as to keep confidential any business, proprietary or trade secret information in your possession pertaining to Legg Mason or its related entities. You also agree (i) to return promptly any books, notes, files, documents, computer data, keys and passwords or other property in the same condition it was in at the time the property was issued to you that belongs to Legg Mason or its related entities; and (ii) not to copy or take or retain in your possession any books, notes, e-mails, documents or property belonging to Legg Mason or its related entities without my express written consent.

4.     You agree not to disclose any information concerning the existence or terms of this Agreement to anyone other than your attorney, tax advisor or spouse. This clause does not bar you from disclosing the terms of this Agreement in any governmental investigation, proceeding or hearing conducted pursuant to law.

5.     In exchange for the consideration in the form of severance pay and benefits provided by Legg Mason in this Agreement, you agree to release and forever discharge Legg Mason as well as its stockholders, parents, subsidiaries, and other related enterprises, and all of those entities' stockholders, directors, officers, employees, agents, insurers, employee benefit plans, fiduciaries, administrators, and successors (past, present and future) (hereinafter "Legg Mason Releasees") from any and all rights, demands, causes of action, complaints, contracts and other claims whatsoever, in law or in equity, which you, your heirs, successors, assigns and any personal or legal representatives have or may have against the Legg Mason Releasees, including all known, unknown, undisclosed and unanticipated claims occurring before and including the effective date of this Agreement. This includes, but is not limited to, rights and claims which may arise out of or are in any way related to your employment by Legg Mason and the

2

termination of your employment and further includes, without limitation, rights and claims under Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the Equal Pay Act, the National Labor Relations Act, the Employee Retirement Income Security Act ("ERISA") and any employee benefit plan sponsored by Legg Mason which is not subject to ERISA, the Americans with Disabilities Act, the Family Medical Leave Act, the New York Human Rights Law and New York City Human Rights Law, the Connecticut Fair Employment Practices Act, the Maryland Human Relations Act, and any other federal, state and local laws, regulations and ordinances prohibiting bias and/or employment discrimination. This also includes, but is not limited to, claims for violation of Legg Mason's policies; wrongful, constructive, or retaliatory discharge; breach of contract or covenant, oral and written, express and implied; common law, and alleged torts; furthermore this includes a release for any costs or attorneys fees you may have incurred.

Notwithstanding the general release above, you do not waive any rights or claims that may arise after your execution of this Agreement, claims that may arise as a result of this Agreement, or claims that may not be waived as a matter of law.   You do not waive or release any right to receive vested benefits under any retirement plan sponsored by Legg Mason. You do not waive rights to unemployment or workers compensation benefits.

This release does not prohibit you from filing a charge with any government administrative agency (such as the Equal Employment Opportunity Commission), however, you waive the right to receive any individualized relief, such as reinstatement, backpay, or other damages, in a lawsuit or administrative action brought by any government agency or individual on your behalf.  You agree that if there is any complaint filed in any court or arbitral forum in which you personally seek reinstatement, damages or other remedies relating to any claim that is covered by this General Release, you will immediately file a dismissal with prejudice of such claim or remedy.

      6.      Both parties agree that neither this Agreement nor the payment of severance pay and benefits is an admission by the Legg Mason Releasees of any liability, wrongdoing or unlawful conduct of any kind.

      7.      You agree that you will not disparage, defame, or otherwise represent in a negative light Legg Mason or its related entities, and any of their officers or employees, services, products, or processes. This clause does not bar you from testifying, assisting or participating in any governmental investigation, proceeding or hearing conducted pursuant to any fair employment practices law.

      8.      In the event that you bring a legal action, or any dispute, claim or controversy relating to this Agreement, your employment or the termination thereof, against any Legg Mason Releasees you agree that, at the option of Legg Mason, you will submit to arbitration. If you are associated in any capacity with a registered broker-dealer, you agree to arbitrate under the Constitution and Rules of the Financial Industry Regulatory Authority, Inc. If you are not associated with a registered broker-dealer, or the FINRA Arbitration forum is not otherwise available to you, you agree to arbitrate pursuant to the employment arbitration rules of the American Arbitration Association.

3

9.      You acknowledge that you have been involved in several projects or tasks which may not have been completed as of the effective date of this Agreement, and, if requested by Legg Mason, you will cooperate with Legg Mason in accomplishing an orderly transition of your responsibilities, and will provide reasonable assistance to Legg Mason in connection with matters that may arise out of your performance of your duties and responsibilities during your employment.

10.      In consideration of the severance pay and benefits set forth herein, you agree that during your employment with Legg Mason and for a period of six (6) months following the termination of your employment for any reason that you will not, directly or indirectly, for yourself or on behalf of a third party, solicit or induce any employee or client of Legg Mason or its related entities to terminate his/her employment or business relationship or to become employed or shift their business elsewhere.

11.      You acknowledge that, at some point in the future, litigation may arise either directly or tangentially relating to your employment at Legg Mason and/or Citigroup and their related entities. You agree to appear without the need for a subpoena to provide deposition testimony and testify at trial and/or arbitration in connection with any such litigation. You also agree to cooperate in providing documents and information necessary to assist in the defense or prosecution of any such case, including telephone calls and meetings with Legg Mason/Citigroup counsel. If applicable, reasonable travel expenses will be paid by Legg Mason.

12.      You agree that the provisions of paragraphs 3, 4, 5, 7, 8, 9, 10 and 11 constitute material inducements to Legg Mason for the additional consideration being paid hereunder and that any breach of the provisions of those paragraphs shall constitute a material breach of this Agreement entitling Legg Mason to a return of the consideration paid by Legg Mason, as well as to claim for any further damages caused by such breach. In addition, Legg Mason may seek injunctive relief to prevent further breaches of those paragraphs.

13.      If any portion of this Agreement is deemed to be invalid by an administrative agency, court, arbitrator, or other person or body deciding a dispute between the parties hereto, the parties intend and agree that the portion of the Agreement that is deemed invalid shall be severed from the Agreement, and that the remainder of the Agreement shall be valid and binding and interpreted in such a manner as respects the wishes of the Parties as much as possible; provided, however, that if such decision is made invalidating all or any part of Paragraph 5 of this Agreement due to a challenge, claim or request submitted by you, then this entire Agreement shall be deemed null and void and you will be obligated to return to Legg Mason all of the severance pay described in Paragraph 1.

14.      This Agreement sets forth the entire agreement and understanding between the parties and supersedes any and all prior agreements or understandings pertaining to your employment or the termination thereof with the exception of any restrictive covenants, non-compete or confidentiality agreements between you and Legg Mason or its related entities, as well as post termination obligations as set forth in the Employee Handbook, which shall remain binding. This Agreement may be modified only in writing and shall be binding upon and inure

4

to the benefit of you, Legg Mason and the respective heirs, executors, successors and assigns of each. Your signature to this Agreement will confirm that you are not relying upon any representations or statements made by Legg Mason or any of its agents, except as set forth herein.

15.     Part of this Agreement is intended to be exempt from Section 409A of the Internal Revenue Code as a short-term deferral, and part of this Agreement is intended to constitute a separation pay arrangement under applicable IRS rules. Nothing contained herein shall be deemed to alter the time or manner of any payment, benefit or amount that is deemed to be deferred compensation that is subject to Section 409A of the Internal Revenue Code, if applicable. By signing this Agreement you acknowledge and agree that Legg Mason does not make any representations as to the tax consequences of any compensation or benefits provided hereunder (including, without limitation, under Section 409A of the Internal Revenue Code, if applicable), and that you are solely responsible for any and all income, excise or other taxes imposed on you with respect to any and all compensation or other benefits provided to you.

16.     This Agreement will be interpreted and enforced in accordance with the laws of the State of Maryland.

You are advised to consult with legal counsel prior to signing this Agreement. If you wish to accept this offer, please sign and return the enclosed copy of this letter in the enclosed postage paid envelope. While I hope that you will accept this offer promptly, it will remain open for 7 days after your receipt of this letter. On the 8th day following your receipt, the offer shall be deemed withdrawn if it was not accepted during the 7 day period.

If you do not accept this proposal, Legg Mason will nevertheless proceed with the termination of your employment on the Separation Date. You will not, however, be provided with any of the benefits or compensation stated above.

I wish you the best of success and personal and professional fulfillment in the future.

Sincerely,

Patricia Lattin
Head of Global Human Resources

5

Date Agreement was given to employee:

12/4/08   SEC

       I ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, UNDERSTAND IT AND VOLUNTARILY SIGN AND ENTER INTO IT, INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS I HAVE OR MIGHT HAVE AGAINST THE LEGG MASON RELEASEES EXISTING AS OF THE DATE THIS AGREEMENT IS SIGNED.

Signature

Date

6